IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

PAUL H. HIEDA and LAUREN F.   )    CIVIL NO. 09-00161 SOM/BMK
HIEDA,    )
   )
       Plaintiffs,    )    ORDER DENYING DEFENDANT
   )    UNITED STATES' MOTION TO
    vs.    )    DISMISS
   )
UNITED STATES OF AMERICA and   )
CITY & COUNTY OF HONOLULU,    )
   )
       Defendants.    )
_____ )

ORDER DENYING DEFENDANT UNITED STATES' MOTION TO DISMISS

I.        INTRODUCTION.

On December 7, 2003, massive rainfall on the island of Oahu, State of Hawaii, caused mud and debris from the hillside of Tripler Army Medical Center ("Tripler") to slide to the residential neighborhood below. Plaintiffs Paul H. Hieda and Lauren F. Hieda (collectively, "the Hiedas"), whose property was damaged by the flooding, now sue Defendant United States of America ("the Government") under the Federal Tort Claims Act ("FTCA") for negligence. The City and County of Honolulu is also named as a Defendant.

The Government has moved to dismiss the First Amended Complaint ("FAC") for lack of subject matter jurisdiction under the "discretionary function" exception to the FTCA. Given the Government's failure to identify any particular social, economic,

1

or political policy relevant to its actions, or any decision

arising from any of those policies, the court denies the motion

with respect to the Hiedas' claims that the Government was

negligent in planning for or designing Tripler.  The court

further denies the Government's motion as to the Hiedas' claims

based on negligent implementation, construction, repair, or

maintenance of Tripler, because such acts are not discretionary

functions.

II.     BACKGROUND.

        The underlying facts surrounding this case are largely

undisputed.  On December 7, 2003, the Hiedas' home was one of

many damaged when torrential rainfall caused flooding and a

landslide in the Moanalua Valley area of Honolulu, Hawaii.  A

mudslide from Moanalua Ridge, where Tripler is located, into the

valley below damaged the Hiedas' real and personal property.  The

Hiedas subsequently brought suit against the Government and the

City and County of Honolulu.  The Hiedas allege in the FAC that

the mudslide was the result of the Government's negligence in

connection with its activities on the property where Tripler is

located:

            On or about December 7, 2003, Defendant
        USA negligently maintained certain conditions
        and negligently engaged in activities on the
        hillside above Plaintiffs' property,
        including, without limitation, improvements
        that were being made to the grounds of the
        Center and the failure to properly design,
        landscape, engineer, repair, and/or maintain

2

> the improvements, property, and/or drainage
> facilities.

FAC ¶ 6, ECF No. 13.

The Government moves to dismiss for lack of subject matter jurisdiction.

III.    STANDARD.

When the Government moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that the actions complained about involve discretionary functions, the court may consider the challenged pleadings, as well as jurisdictional facts supplied by affidavit, declaration, or other evidence properly before the court. Green v. United States, 630 F.3d 1245, 1248 n.3 (9th Cir. 2011). The party asserting subject matter jurisdiction usually bears the burden of establishing proper jurisdiction. See Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979). However, when the discretionary function exception is invoked, the Government bears the burden of establishing that the exception applies. See Whisnant v. United States, 400 F.3d 1177, 1181 (9th Cir. 2005); Bear Medicine v. United States ex rel. Sec'y of the Dep't of the Interior, 241 F.3d 1208, 1213 (9th Cir. 2001); Def. United States' Mot. to Dismiss at 7, Aug. 31, 2011, ECF No. 67 ("Motion").

IV.     ANALYSIS.

        A.   The "Discretionary Function" Exception.

        The Government's sole argument for dismissal of the FAC

is that the discretionary function exception to the FTCA bars the

Hiedas' claims.  Normally, "[a] party may bring an action against

the United States only to the extent the Government waives its

sovereign immunity."  Valdez v. United States, 56 F.3d 1177, 1179

(9th Cir. 1995).  The FTCA operates to waive the Government's

sovereign immunity for claims "arising out of the negligent

conduct of government employees acting within the scope of their

employment."  Soldano v. United States, 453 F.3d 1140, 1145 (9th

Cir. 2006) (citing Valdez, 56 F.3d at 1179).  Thus, the

Government can be sued "under circumstances where the United

States, if a private person, would be liable to the claimant in

accordance with the law of the place where the act or omission

occurred."  28 U.S.C. § 1346(b) (2011).

        However, the FTCA's waiver of immunity is limited by

the discretionary function exception, which "restores the

government's immunity in situations where its employees are

carrying out governmental or 'regulatory' duties."  Faber v.

United States, 56 F.3d 1122, 1124 (9th Cir. 1995).  The United

States is not liable for

                [a]ny claim based upon an act or omission of
                an employee of the Government, exercising due
                care, in the execution of a statute or
                regulation, whether or not such statute or

                                4

> regulation be valid, or based upon the
> exercise or performance or the failure to
> exercise or perform a discretionary function
> or duty on the part of a federal agency or an
> employee of the Government, whether or not
> the discretion involved be abused.

28 U.S.C. § 2680(a) (2001).  The purpose of the statutory

exception is to prevent judicial second-guessing of legislative

and administrative decisions grounded in social, economic, and

political policy through the medium of an action in tort.  See

United States v. Gaubert, 499 U.S. 315, 323 (1991).  "Where the

exception applies, no federal subject matter jurisdiction

exists."  In re Glacier Bay, 71 F.3d 1447, 1450 (9th Cir. 1995)

(citing Lesoeur v. United States, 21 F.3d 965, 967 (9th

Cir. 1994)).

The discretionary function exception bars a tort claim

when a two-part test is satisfied.  See Gaubert, 499 U.S. at 322-

25; Berkovitz v. United States, 486 U.S. 531, 536-37 (1988).  As

stated by the Ninth Circuit,

> First, we determine whether the
> challenged actions involve "'an element of
> judgment or choice.'"  Valdez, 56 F.3d at
> 1179 (quoting United States v. Gaubert, 499
> U.S. 315, 322, 111 S. Ct. 1267, 113 L. Ed. 2d
> 335 (1991)).  Our inquiry looks to the
> "nature of the conduct, rather than the
> status of the actor," and the discretionary
> element is not met where "a federal statute,
> regulation, or policy specifically prescribes
> a course of action for an employee to
> follow."  Berkovitz, 486 U.S. at 536, 108 S.
> Ct. 1954 (internal quotation marks and
> citation omitted).  In such event, our
> inquiry is at an end, and the discretionary

function exception does not apply because
"the employee has no rightful option but to
adhere to the directive." Id.

However, if an element of choice or
judgment is involved, we move to the second
step of the analysis and determine "'whether
that judgment is of the kind that the
discretionary function exception was designed
to shield.'" Gaubert, 499 U.S. at 322-23,
111 S. Ct. 1267 (quoting Berkovitz, 486 U.S.
at 537, 108 S. Ct. 1954). The exception
"protects only governmental actions and
decisions based on considerations of public
policy.'" Id. at 323, 111 S. Ct. 1267
(quoting Berkovitz, 486 U.S. at 537, 108 S.
Ct. 1954). In other words, only those
decisions "grounded in social, economic, and
political policy" will be protected by the
discretionary function exception. Childers
v. United States, 40 F.3d 973, 974 (9th Cir.
1994). The exception "will apply if the
discretionary decision made is a permissible
exercise of policy judgment," Conrad, 447
F.3d at 765, even if the decision is an abuse
of discretion granted. See U.S.C. § 2680(a).

Soldano, 453 F.3d at 1145. See Senger v. United States, 103 F.3d

1437, 1444 (9th Cir. 1996).

"[T]he proper level of inquiry must be act by

act. . . . The proper question to ask is not whether the

Government as a whole had discretion at any point, but whether

its allegedly negligent agents did in each instance. Each

separate action must be examined to determine whether the

specific actor had discretion of a type Congress intended to

shield." In re Glacier Bay, 71 F.3d at 1451 (internal citations

omitted). Accordingly, the court must examine each alleged act

and inquire first whether the conduct involves an element of

judgment or choice, and second, whether imposing liability would give rise to judicial second-guessing of legislative and administrative decisions grounded in social, economic and political policy.

The Ninth Circuit recognizes that "the distinction between protected and unprotected decisions can be difficult to apprehend, but this is the result of the nature of governmental actions." <u>Soldano</u>, 453 F.3d at 1145. The Government's actions can be said to fall "along a spectrum, ranging from those 'totally divorced from the sphere of policy analysis,' such as driving a car, to those 'fully grounded in regulatory policy,' such as the regulation and oversight of a bank." <u>See</u> <u>Whisnant</u>, 400 F.3d at 1181 (citing <u>O'Toole v. United States</u>, 295 F.3d 1029, 1035 (9th Cir. 2002)).

> 1. Whether There Was An Element Of Judgment Or <u>Choice.</u>

The first inquiry is whether the Government agency's or employee's actions necessarily involved an element of judgment or choice. As this court noted above, if an employee's action results from compliance with a mandatory directive, the Government is shielded from all liability. <u>Gaubert</u>, 499 U.S. at 324. If, however, the employee violates the mandatory regulation, the Government is not shielded from liability because there is no room for choice and the action will be contrary to policy. <u>Id.</u> In the absence of any statute, regulation, or

policy compelling an employee's actions, those actions involve judgment or choice.  See Gager v. United States, 149 F.3d 918, 920 (9th Cir. 1998).

> ### 2. Whether The Government's Acts Were Grounded In Social, Economic, Or Political Policy.

If an element of judgment or choice is involved, the court must move to the second step of the analysis and determine "whether that judgment is of the kind that the discretionary function exception was designed to shield."  Gaubert, 499 U.S. at 322-23.  The exception "protects only governmental actions and decisions based on considerations of public policy."  Id. at 323.  The policy may be social, economic, or political policy.  Blackburn v. United States, 100 F.3d 1426, 1429 (9th Cir. 1996).

The Government need not show that it made a conscious decision on the basis of social, economic, or political policy judgments.  In Kennewick Irrigation District v. United States, 880 F.2d 1018 (9th Cir. 1989), the Ninth Circuit restated its holding in In re Consolidated U.S. Atmospheric Testing Litigation, 820 F.2d 982, 998-99 (9th Cir. 1987), rejecting the appellants' argument that the discretionary function exception cannot apply in the absence of a "conscious decision."  The Ninth Circuit read the FTCA as providing broader protection against all claims based on a failure to exercise or perform a discretionary function.  Kennewick, 880 F.2d at 1026.  In fact, not only does the discretionary function doctrine not require a challenged

8

decision to be the result of a "conscious decision" to exercise discretion, the doctrine does not require the decision to "be actually grounded in policy considerations" at all. Green, 630 F.3d at 1251. To qualify under the second prong of the discretionary function analysis, the action must only be, "by its nature, susceptible to a policy analysis." Id.

        B.    Although The Hiedas' Claims For Negligent Design And Planning Would Normally Be Barred By The Discretionary Function Exception, The Government Has Not Shown That Its Actions Were Susceptible To Any Policy Analysis.

To the extent the Hiedas' claims are based on the Government's design and planning of Tripler, such actions appear likely to fall within the discretionary function exception to the FTCA. The court cannot, however, say on the present record that the claims do indeed fall within the exception.

The first part of the two-step discretionary function test, which examines whether a decision involved judgment or choice, is not where this court sees a problem. The Ninth Circuit has routinely viewed design decisions as involving a discretionary function and therefore not a permitted basis of a claim against the Government.

For example, in Kennewick, the plaintiff brought negligence claims against the Government for injury arising out of breaks in an irrigation canal designed and constructed by the Government. The Government argued that its design and

9

construction of the canal fell within the discretionary function
exception, and the Ninth Circuit agreed as to the design of the
canal.  In considering the first prong, the Ninth Circuit found
no federal statute, regulation, or policy that prescribed a
course of action and thereby divested officials of discretion.
<u>Kennewick</u>, 880 F.2d at 1027.  The court stated that something
more than a general safety policy was required in this regard:

> <u>Berkovitz</u> thus establishes that a safety
> or engineering standard operates to remove
> discretion under the FTCA when it is embodied
> in a <u>specific</u> and <u>mandatory</u> regulation or
> statute which creates clear duties incumbent
> upon the governmental actors.  A general
> statutory duty to promote safety, as was
> incumbent upon the FAA in <u>Variq</u>, would not be
> sufficient. . . . [D]iscretion may be removed
> by a specific mandatory governmental <u>policy</u>
> duly adopted under authority delegated by
> statute or regulation.  Finally, in this
> circuit we have held that discretion may be
> removed if the government incorporates
> specific safety standards in a contract which
> imposes duties on the government's agent.

<u>Id.</u> at 1026 (emphasis in original) (internal citations omitted).

The Hiedas allege that the Government "negligently
maintained certain conditions and negligently engaged in
activities on the hillside above Plaintiffs' property, including,
without limitation, improvements that were being made to the
grounds of the Center and the failure to properly design,
landscape, engineer, repair, and/or maintain the improvements,

property, and/or drainage facilities." FAC ¶ 6, ECF No. 13.[1]

Insofar as the Hiedas allege negligence in designing, planning,

or engineering Tripler and the surrounding areas, this court has

no difficulty concluding that, as no statute, regulation, or

policy divesting the Government of discretion has been identified

for the court, the actions complained about with respect to

planning and design must have involved a judgment or choice.  See

Gager, 149 F.3d at 920.

The court therefore turns to the second prong of the

two-step discretionary function test: were decisions related to

the design and planning of Tripler and its improvements grounded

in a social, economic, or political policy or susceptible of a

policy analysis?  In Kennewick, the Ninth Circuit viewed the

decision not to line irrigation canals as involving not only

engineering analysis, but also judgment in the form of the

balancing of many technical, economic, and even social

considerations.  Kennewick, 880 F.2d at 1029.

Similarly, in  United States v. Ure, 225 F.2d 709 (9th

Cir. 1955), the Ninth Circuit stated that decisions regarding the

---

[1] The Government characterizes the Hiedas' claim as
alleging only that "the United States should have designed and
built the TAMC drainage system in anticipation of their home
being built decades after the completion of TAMC and that the
drainage system should have been designed for 50 or 100 year
storms[.]"  Motion at 10, ECF No. 67.  Although there is a design
element to the Hiedas' claim, the Hiedas also allege negligence
relating to other acts.

design of an irrigation canal involved the protected exercise of a discretionary function.  Ure, 225 F.2d at 712.  The decision in Ure "rested upon practical considerations, including the vital item of cost."  Id.

Valley Cattle Company v. United States, 258 F. Supp. 12 (D. Haw. 1966), is also instructive here.  Valley Cattle Company involved heavy rainfall that caused flooding from Bellows Field on Oahu.  The plaintiff's calves died in the flood.  The Government argued in that case that it was not subject to liability under the FTCA, because its decision to design the culverts at Bellows Field for a two-year storm fell within the discretionary function exception.  The court agreed with the Government that "[e]ven if storms of greater magnitude than 2-year storms were foreseeable by the U.S. Engineers, their decision to construct the Bellows Field culvert on a 2-year design storm frequency was clearly a discretionary act at the planning level and no liability can here fall upon the Government for injuries claimed to have resulted from the decision."  Id. at 19-20.

The Hiedas argue that their claims are distinguishable from the claims made in the above-cited cases.  The Hiedas point out that they are not suing over decisions regarding the location of Tripler, the expansion of Tripler's facilities, or the implementation of storm criteria.  See Pls.' Mem. in Opp. to Def.

United States of America's Mot. to Dismiss at 17–19, Nov. 22,
2011, ECF No. 76 ("Opposition"). Rather, they say, they are
suing over the failure of the Government to "provide for the safe
disposal of runoff exceeding the design storm criterion[.]" Id.
at 20. To the extent the Hiedas allege negligence against the
Government for its "failure to properly design, . . . [or]
engineer . . . the improvements, property, and/or drainage
facilities[,]" their claims appear analogous to those that were
dismissed in Kennewick and Ure. For example, the Hiedas say,
clarifying their FAC:

> Plaintiffs fault the federal government for a
> drainage system in December 2003 that did not
> provide for the safe disposal of runoff
> exceeding the design storm criterion that the
> government argues was applicable. Plaintiffs
> assert that the deficient drainage system in
> place in 2003 did not result from the
> exercise of judgment regarding public policy.
> Instead, the deficient drainage system arose
> from common negligence. Despite having
> assumed the responsibility to assess and
> correct any deficiencies in the drainage
> system atop Moanalua Ridge, the Government
> did not install berms, inlets, and/or curbs
> along Jarret White Road to retard or prevent
> excess surface water from flowing off of
> Jarrett White Road and onto the slopes above
> Hakuaina Road, and energy dissipation devices
> on the outlets for any excess surface water
> from the parking lot area.

Opposition at 20, ECF No. 76.

The Government's decision not to adopt a particular
safety measure may well be the very kind of decision that courts
have not been allowed to second-guess. See Valdez, 56 F.3d at

13

1178 (decision not to post signs warning of dangers is within discretionary function exception); <u>Childers</u>, 40 F.3d at 976 (decision to use brochures, rather than signs, as warnings is within discretionary function exception); <u>ARA Leisure Servs. v. United States</u>, 831 F.2d 193, 195 (9th Cir. 1987) (decision to design road without guardrails is within discretionary function exception). Even if the Government's decision to implement a "deficient drain system arose from common negligence," as the Hiedas allege, if the decision was grounded in a policy choice, that sort of negligence would not give rise to a viable claim. "[N]egligence is simply irrelevant to the discretionary function inquiry. Indeed, if the presence of negligence were allowed to defeat the discretionary function exception, the exception would provide a meager shield indeed against tort liability." <u>Kennewick</u>, 880 F.2d at 1028 (internal citations omitted).

This court shares the Government's concern about whether at least the Hiedas' planning and design claims implicate discretionary governmental functions. However, this court feels constrained from granting the present motion. The Government does not identify any social, economic, or political policy relevant to the design and planning of Tripler. The court cannot help but conclude that this failure renders the present motion deficient. The Government "bears the ultimate burden of proving the applicability of the discretionary function exception."

<u>Valdez</u>, 56 F.3d at 1179.  The discretionary function exception is
implicated "where circumstances clearly showed" that decisions
were "the result of a judgment grounded in social, economic and
political policy."  <u>Soldano</u>, 453 F.3d at 1146.

The Ninth Circuit provides a particularly clear
articulation of the Government's burden on the policy issue in
<u>Prescott v. United States</u>, 973 F.2d 696 (9th Cir. 1992).
<u>Prescott</u> concerned governmental actions relating to a nuclear
test site.  The Ninth Circuit quoted, without disagreeing with,
the district court's statement that "[i]t is undisputed that
'nuclear tests themselves and all decisions and planning made in
preparation and carrying out of the tests and in the evaluation
of the test results are clearly within the discretionary function
exception and thus immune from suit.'"  <u>Id.</u> at 702 (quoting
<u>Prescott v. United States</u>, 724 F. Supp. 792, 798-99 (D. Nev.
1989)).  Both the district court and the Ninth Circuit
nevertheless concluded that the Government was not entitled to
summary judgment on the discretionary function issue.

The plaintiffs in <u>Prescott</u> claimed to have suffered
radiation injuries resulting from their work at the United States
Nevada Test Site.  They attributed their injuries to the
Government's failure to establish and monitor radiation levels
and exposure, to advise workers and individuals about radiation
effects, to provide protection from or to minimize radiation

effects, to adjust practices after learning of radiation dangers,
to take precautions with respect to radiation exposure during
tests, to properly train and supervise employees and agents about
radiation, and to advise workers to have medical check-ups to
diagnose cancers promptly.  The Ninth Circuit, noting that it had
never extended blanket immunity to all nuclear-related
activities, held that the Government had failed to meet its
burden of showing that its actions were grounded in policy.

    The Ninth Circuit stated:

> In its motion to the district court, the
> government did not come forth with evidence
> to prove that the alleged acts of negligence
> by test site officials "involve[d] an element
> of judgment."  Nor did the government put
> forth evidence that the judgment (if any) was
> grounded in social, economic, or political
> policy.  Instead, having shown that these
> actions were carried out in the course of the
> nuclear testing operations, the government
> relied exclusively on <u>Atmospheric Testing</u>,
> which it read as providing a blanket immunity
> to all government operations related to
> nuclear testing.  Implicit in the
> government's summary reliance on <u>Atmospheric
> Testing</u> is the view, in the context of
> nuclear testing, that the government need not
> prove that particular acts and omissions
> resulted from choices grounded in social,
> economic and political policy because
> <u>Atmospheric Testing</u> has brought all such acts
> and omissions within the purview of the
> exception.  In essence, then, the government
> interprets <u>Atmospheric Testing</u> as holding
> that a complaint based on a government
> employee's negligence in carrying out a
> nuclear test necessarily constitutes a
> pleading outside the FTCA's waiver of general
> immunity. We have already rejected this
> expansive reading of <u>Atmospheric Testing</u>.

In sum, we affirm the district court's
order denying summary judgment because the
government failed to adduce any evidence that
the specific acts of negligence flowed
directly from the policy choices of on-site
officials who had been explicitly entrusted
with the responsibility of weighing competing
policy considerations.

Id. at 703 (internal citations omitted).

Importantly, the court also noted:

The government, of course, need not
necessarily prove that a government employee
actually balanced economic, social, and
political concerns in reaching his or her
decision. Kennewick, 880 F.2d at 1028
Nevertheless, the government must, at a
minimum, prove that the challenged decision
was susceptible to such balancing or that the
government employee was entrusted with the
responsibility of conducting such balancing.
Berkovitz, 486 U.S. at 536; [Ariz. Maint. Co.
v. United States, 864 F.2d 1497, 1501 (9th
Cir. 1989)]; [Roberts v. United States, 887
F.2d 899, 901-02 (9th Cir. 1989)].

Id. at 703 n.5.

Even when the Ninth Circuit has concluded that the

Government's actions were shielded by the discretionary function

doctrine, it has relied on substantial information in the record

establishing policies relevant to the Government's decisions.

See, e.g., Soldano, 453 F.3d at 1147-48 (discussing evidence of

policy to minimally intrude on the natural or historic setting of

a national park in placing signs along roads, policy to avoid

unnecessary proliferation of signs, and policy of ensuring

visitor safety); Kennewick, 880 F.2d at 1025 (discussing economic

policies implicated in canal design decisions); <u>Ure</u>, 225 F.2d at 712-13 (holding "that the decision not to line the canal throughout rested upon practical considerations, including the vital item of cost").

In the present case, the Government, implicitly relying on the assumption that "blanket immunity" is automatically conferred upon all decisions related to design and planning, fails to make any record at all relating to any social, economic, or political policy forming the basis of its actions. This was the same error the Ninth Circuit said the Government made in <u>Prescott</u>, the radiation case.

The Government's motion to dismiss does not include any discussion of competing policy interests or explain how the design of Tripler or its drainage system was based on policymaking discretion that Congress intended to shield from judicial second-guessing. The Government takes great pains to point to the Hiedas' expert's opinion that the Government's alleged negligence is based on decisions falling within the discretionary function exception, but the Government does not show either that the Government exercised discretion in furtherance of an identified policy or that the Government's decisions are "susceptible to a policy analysis." <u>See</u> <u>Green</u>, 630 F.3d at 1251. The Hiedas' expert's opinion that the Government should have designed Tripler's drainage facilities above the

standard ten-year-storm criteria establishes that the Government

had more than one standard to choose from, but that element of

choice goes only to the first prong of the discretionary function

analysis.  The second prong, which concerns social, economic, or

political policies, is not addressed by the mere existence of a

choice.  The Hiedas are therefore correct in stating that "the

Government utterly fails to identify the applicable federal

public policy at issue."  Opposition at 22-23, ECF No. 76.

Even at the hearing on this issue, the Government, when

pressed by the court, was unable to articulate any social,

economic, or political policy underlying the Government's

allegedly protected decisions.  See Gaubert, 499 U.S. at 323;

Blackburn, 100 F.3d at 1429.

The burden is on the Government to prove that its

decisions were, at the very least, susceptible to the balancing

of policy considerations.  Having failed to articulate any

relevant policy, the Government does not meet this burden.

Accordingly, the court cannot at this time dismiss the Hiedas'

claims for negligent design or planning based on the

discretionary function exception.

    C. The Hiedas' Claims Against The Government For
      Negligent Construction, Maintenance, And Repair
      Are Not Barred By The Discretionary Function
      Exception.

To the extent the Hiedas allege negligent construction,

maintenance, and other forms of "garden variety" negligence, such

claims do not fall within the discretionary function exception of the FTCA.

In <u>Whisnant</u>, the Ninth Circuit held that the discretionary function exception did not apply to the Government's implementation of its safety procedures. <u>Whisnant</u>, 400 F.3d at 1181-82. <u>See</u> <u>In re Glacier Bay</u>, 71 F.3d at 1453 ("[a]n element of judgment is involved here [in construction decisions], but the decision nevertheless falls outside the types of public policy decisions intended to be shielded by the discretionary function exception.").

Similarly, in <u>Soldano</u>, the Ninth Circuit expounded on the difference between negligence in making public policy decisions and in implementing safety measures:

> In particular, we have declined to find the discretionary function exception applicable "where the challenged governmental activity involves safety considerations under an established policy rather than the balancing of competing public policy considerations." <u>ARA Leisure Servs. v. United States</u>, 831 F.2d 193, 195 (9th Cir. 1987). In <u>ARA Leisure Services</u>, the Park Service's decision to design the Denali Park Road in Alaska without guardrails was grounded in economic and political policy, but the Park Service's failure to maintain a pass on that road in safe condition was not. There was "no clear link between Park Service road policies and the condition" of the pass, so the government's failure to maintain the road "fell in the category of 'ordinary "garden-variety" negligence'" that the FTCA did not immunize from suit. <u>Id.</u> at 195-96 (quoting <u>Aslakson v. United States</u>, 790 F.2d 688, 693-94 (8th Cir. 1986)).

20

Soldano, 453 F.3d at 1146.  See Whisnant, 400 F.3d at 1183 (suit is not barred when plaintiff alleges that the Government was negligent in following through on safety procedures); Bear Medicine, 241 F.3d at 1215 ("The decision to adopt safety precautions may be based in policy considerations, but the implementation of those precautions is not.").

In Kennewick, while holding that the Government was shielded from liability for any negligence in connection with design decisions, the Ninth Circuit allowed the suit to proceed as to alleged negligence in the construction of the canal.  It first noted that the Government had discretion in constructing the canal, because under the terms of the construction contract, "the contracting officer was vested with discretion to determine when unsuitable material was present, and any duty to remove it was contingent upon a determination that such material was indeed present."  Kennewick, 880 F.2d at 1031.  See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 820 (1984) (FAA inspectors who conducted compliance reviews of particular aircraft were exercising discretion).  But the discretion exercised in the building of the canal was not the type protected by the discretionary function exception: "the contracting officer's discretion in deciding whether to remove unsuitable materials during construction was based not on policy judgments but on technical, scientific, engineering

21

considerations." <u>Kennewick</u>, 880 F.2d at 1031. "The contracting officer's on-site decisions were not based on public policy and they are not entitled to immunity from lawsuit based on negligence under the discretionary function exception. The contracting officer had no 'room for <u>policy</u> judgment and decision.'" <u>Id.</u> at 1031 (emphasis in original).

Besides alleging negligent design, the Hiedas are alleging negligence in constructing, maintaining, and repairing Tripler and its improvements. <u>See</u> FAC ¶ 6, ECF No. 13. These acts are not by their nature grounded in public policy. Negligent acts not grounded in any social, economic, or political policy are not prohibited by the discretionary function doctrine.

The Government urges the court to apply the reasoning in <u>Valley Cattle Company</u> and to bar the Hiedas' suit. However, that case merely stands for the proposition that the "decision to construct the Bellows Field culvert on a 2-year design storm frequency was clearly a discretionary act at the planning level[.]" <u>Valley Cattle Co.</u>, 258 F. Supp. at 19–20. The district court was not considering maintenance or repair. Instead, it was examining decisions to design based on a two-year storm frequency. This kind of decision falls under the discretionary function exception if linked to a social, economic, or political policy. <u>Valley Cattle Company</u> does not say that negligent implementation of plans and policies is similarly

protected.

V.      <u>CONCLUSION.</u>

As the Government has not met its burden of establishing that the discretionary function exception applies to the Hiedas' claims, the Government's motion to dismiss is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, <u> December 23, 2011 </u>.



                      <u> /s/ Susan Oki Mollway </u>
                      Susan Oki Mollway
                      United States District Judge

<u>Paul H. Hieda et al. v. United States of America et al.</u>, Civil No. 09-00161 SOM/BMK; Order Denying Defendant United States' Motion to Dismiss.

23